IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LOUIS GOLDBERG, ET AL.,** *Plaintiffs/Counter-Defendant*, v. **LUKAS KACZMAREK, ET AL.,** *Defendants/Counter-Plaintiff*. | Civil No.: 1:25-cv-2477-JRR |

## MEMORANDUM OPINION AND ORDER

The court has before it Counter-Plaintiff DHECA, S.R.L.'s ("DHECA") Motion to Appoint Receiver. (ECF No. 63; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

### I.  INTRODUCTION

This consolidated action includes, at present, 22 counts related to alleged business torts, and the rights and obligations of the various parties, but the nucleus of this action is about ownership of HoudiniSwap LLC (the "Company"). Specifically, Plaintiff/Counter-Defendant Louis Goldberg and Defendant/Counter-Plaintiff DHECA each claims status as the "rightful owner" of the Company. As set forth in the order at ECF No. 68, a preliminary injunction hearing on this very question has been scheduled for January 8, 2026; at present, however, DHECA's Motion is ripe for disposition and the court finds it prudent to resolve it now.

### II.  APPLICABLE LAW

As a backdrop, Federal Rule of Civil Procedure 66 provides as follows:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

FED. R. CIV. P. 66.

At the outset, it should be noted that the court has equitable discretionary power to appoint a receiver where necessary. Appointment of a receiver is an extraordinary remedy to be applied sparingly and with the utmost caution; it is appropriate only in extreme circumstances. Courts are cautioned not to appoint a receiver except in cases of clear necessity to protect a movant's interest in the subject property where no lesser form of intervention will effectively protect such interest. For these reasons, a party requesting appointment of a receiver bears a heavy burden. *LNV Corp. v. Harrison Family Bus.*, LLC, 132 F. Supp. 3d 683, 689-90 (D. Md. 2019) (summarizing and citing Supreme Court, Fourth Circuit and other cases, and treatise authorities); *Wilmington Trust, N.A. v. Homes4Families, LLC*, Civ. Case. DKC 19-1896, 2019 WL 5787985, *3 (D. Md. Nov. 6, 2019) (same); *see also Tcherepnin v. Franz*, 277 F. Supp. 247, 474 (N.D. Ill. 1966) ("It is true, of course, the power to appoint a receiver is a drastic, harsh and dangerous one and should be exercised with care and caution") (quoting *Connolly v. Gishwiller*, 162 F.2d 428, 435 (7th Cir. 1947)); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314 (8th Cir. 1993) (explaining receiver may be warranted if record shows probability that fraud has occurred or will occur to injure movant's claim or interest, imminent danger to property, inadequacy of legal remedy, and that receiver would do more good than harm).

Over time, case law has developed several factors for the court to consider in determining whether to grant a motion to appoint a receiver. No factor is dispositive; some may not be relevant to a given dispute; and the court may of course consider other factors depending on what a case

presents. Generally, as pertains to the nature of the instant action, courts are counseled to consider the following:

1. Whether the defendant is alleged to have engaged in fraudulent conduct;

2. Whether the property (the Company) is in imminent danger and an emergency exists;

3. Whether available legal remedies are adequate;

4. Whether harm to the movant caused by denial of appointment would exceed harm to the defendant and others opposed to appointment;

5. Whether the movant is likely to succeed in the action;

6. Whether the movant's interest in the property is susceptible to irreparable injury absent appointment;

7. Whether the movant's and others' interests sought to be protected will be well-served by receivership.

*LNV Corp.*, 132 F. Supp. 3d at 689–90.

As a threshold matter, DHECA must demonstrate a legally recognized substantive right in the Company that amounts to more than a mere claim. Simple examples of such a right, and seen frequently in receiver cases, are secured creditor, lienholder and mortgagee status, and judgment creditor status. 12 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2983 (3d ed. 2025) (collecting cases). Further, in demonstrating its likelihood of success in the action, DHECA must come bearing more than general allegations of wrongdoing or conduct on Goldberg's part; a possibility of success is not enough. *See, e.g.*, *Tcherepnin,* 277 F. Supp. at 474, *supra*.

Importantly, the court is also mindful that receivership can do more harm than good to an entity as a going concern; this observation (and others, to be sure) is fairly incorporated into the

3

generally accepted principle that receivership is extreme and to be avoided in all but the most acute cases of harm or loss to a demonstrated interest.  *See, e.g.*, *Tryke Mgmt. Servs. LLC v. Linx Card Inc.*, Civ. Case 19-5324, 2020 WL 9258369, *6 (D. Ariz. Feb. 27, 2020) (declining to appoint where movant "failed to credibly allege mismanagement, fraud, or asset dissipation," and noting "appointment of a receiver might very well harm [movant's] interests"); *Maher v. Rowen Group*, Civil Case 12-7169, 2013 WL 5995425, *5 (N.D. Ill. Nov. 12, 2013) (observing that receiver would not be as familiar with business; and would lack same rapport and relationships with vendors, customers and manufacturers); *IP Co. v. Cellnet Tech., Inc.*, Civil Case JEC 06-3048, 2008 WL 11337779 at *2 (N.D. Ga. Dec. 18, 2008) (declining to appoint and noting movant "has not persuasively shown that a receivership will do more good than harm. The cost of appointing a receiver, including the receiver's hourly rate and the time and expense involved in assembling records for the receiver's review, will likely be significant. . . . Moreover, the appointment of a receiver would necessarily complicate the litigation")

### III.   ANALYSIS

DHECA's Motion is premised on the following: 1) "DHECA and Kaczmarek have provided the Court with dozens of corporate records showing DHECA is the rightful owner of HoudiniSwap LLC and the assets formerly controlled by that entity []" (ECF No. 63-1 at p. 1); 2) DHECA "remains essentially locked out from control and ownership by Goldberg" and claimed CEO, Rogers, *id.*; the Company is in "deadlock," *id*. at p. 4; 3) Goldberg has "dissipated at least $3.9 million worth of the Company's crypto assets, improperly asserted claims on behalf of the Company, exposed the Company to self-serving frauds, taken positions that threaten the Company's contracts with third-party vendors, and subjected the Company to significant regulatory liabilities" and "threatens to (improperly and illegitimately) sell HoudiniSwap (a

company he does not own) to third parties," *id* at p. 2; 4) "Stakeholders—including customers, vendors, contractors, and business partners—cannot know whether a purported representative is an authorized agent with the legal authority to speak on behalf of and bind HoudiniSwap. The Company cannot protect its assets from waste, concealment, or dissipation. And there are no means of ensuring that HoudiniSwap is legally compliant in the volatile international crypto swapping business," *id.* at p. 3; and 5) "DHECA has legal exposure and responsibility for HoudiniSwap's conduct" including in the event Goldberg breaches a Company contract, "violates a regulation, or breaks a law []," *id.* at p. 3.

Before applying applicable case law and legal principles, it bears mentioning that DHECA's Motion does not address head on the complexities a would-be receiver (and the court, in overseeing same) would encounter with respect to the fact that the Company is a limited liability company incorporated under the laws of St. Vincent and the Grenadines ("SVG") with, as far as the court understands, its assets entirely outside the United States (and, DHECA asserts, held by it, an entity of the Dominican Republic). Except to state in its Reply that these complexities are not insurmountable and should be of little concern to the court, DHECA does not adequately address the management challenges these circumstances would clearly present both with respect to the proposed receivership itself as well as the court's important role in monitoring and overseeing a receivership. Although the Company's multi-national status is certainly not dispositive, it would seem a relevant, if not important, consideration inasmuch as DHECA requests appointment of a receiver to "take control" of the Company, and asserts in support of its request a host of alleged wrongs Goldberg has engaged in with respect to the Company and DHECA's asserted rights therein, and further faults Goldberg for not "address[ing] how their[1] conduct is

---

[1] DHECA refers here to Goldberg and Joshua Rogers—whom Goldberg and the Company assert is the CEO of the Company, and whom DHECA asserts it fired from that post in May 2025. (ECF No. 55.)

appropriate under the applicable corporate law of St. Vincent and the Grenadines." (ECF No. 63-1 at p. 2.)

DHECA's omission (other than in its Reply responding to these issues raised in opposition to the Motion) is a rather sharp departure from September 2025 correspondence from DHECA's counsel (ECF No. 69), which impressed upon the court the importance of the following regarding the case generally and specifically with respect to its position that a receiver should be appointed:

> SVG law regarding cryptocurrency companies like HoudiniSwap went into effect on May 31, 2025, potentially threatening the company's ability to do business if maintained in that jurisdiction. . . . The new SVG law requires several new onerous requirements for cryptocurrency companies to properly operate. Under SVG's Limited Liability Companies Act, the owner and manager of a record is potentially subject to significant penalties for its companies' actions, including fines and imprisonment for statutory non-compliance. . . . Plaintiffs ignore completely that foreign law governs this ownership dispute.

*Id.*

As explained, DHECA, as the movant, bears a heavy burden on the Motion; it is not Goldberg's burden (on the Motion) to show that his actions are not unlawful under SVG law (or any law, for that matter). Adding to that the relatively nascent stage of the case (*e.g.*, a pre-trial scheduling order has not issued), the court is unmoved by what DHECA couches as Goldberg's failure to prove his alleged actions vis-à-vis the Company are proper under SVG law.

The court now considers whether to appoint a receiver through examination of Fourth Circuit law and persuasive case law from outside this circuit.

As to the first identified basis of the Motion, DHECA asserts it is the true owner of the Company. DHECA omits to mention or account for the fact that, although Goldberg generally does not appear to contest the existence of email correspondence and other documents on which

6

DHECA relies to demonstrate its interest, Goldberg hotly contests DHECA's purported status as the "true owner" on grounds of fraud and deception as to the very documents on which DHECA relies, including a scheme of artifice forming civil RICO and civil RICO conspiracy claims, as well as tortious interference with Goldberg's rights and interests with respect to the Company. DHECA's presentment of its interest in the Company does not suffice to demonstrate its status as a legal claim or stakeholder in the Company for purposes of appointment of a receiver; instead, what it presents (in fulsome, proper context) amounts to a disputed claim of ownership.[2]

Regarding DHECA's assertion that a receiver should be appointed because the Company is in "deadlock" by virtue of DHECA having been "locked out," assuming without finding that DHECA has been "locked out" of the Company, DHECA's description of the result as a deadlock necessitating, or reasonably calling for, receivership is misplaced. Deadlock in the context of receivership analysis exists where factions of an entity with equal (or effectively equal) say-so are so at odds that the company cannot function and is, therefore, at grave risk of death by inertia. That is not what DHECA describes and that is certainly not the record before the court. (Ex. A to ECF No. 66-1, Declaration of Josh Rogers, attesting to, *inter alia*, his experience with the Company; solvency, profitability, and growth of the Company; Company engagement of professional services for tax and regulatory purposes; Company employment base and growth; Company financial records and assets; operational relationship with Goldberg; and general Company operations and overall stability). *See Rio Verde Plantas, LLC v. O&S Holdings, LLC*,

---

[2] The court pauses to remark that the extent to which DHECA demonstrates more than a possibility of success on the merits (as a factor to consider on the Motion) does not include its assertion of a property interest in the Company, because that would turn the standard and applicable factors on their head. In other words, a motion for appointment of receiver is not a proper vehicle to resolve the merits of DHECA's claim of ownership, which is to say a motion for receiver is not a tool to force or compel the court to determine the very question of property interest on which the motion is itself premised. Therefore, the court will not, on the Motion and without proper discovery and a fulsome record, weigh the record (such as it is) or endeavor to make fact findings and credibility calls to conclude DHECA's chances of proving its asserted property interest in the Company as a matter of law.

Civil Case 3:35-98-JR, 2025 WL 1368639, at *2 (D. Or. Mar. 21, 2025), report and recommendation adopted, 2025 WL 1141184 (D. Or. Apr. 17, 2025) (noting deadlock where co-equal members dispute access to financial data, causing loan default); *Gardner v. Larkin*, Civil Case 19-139-JJM, 2020 WL 831860, at *23 (D.R.I. Feb. 20, 2020), report and recommendation adopted, 2020 WL 1502300 (D.R.I. Mar. 30, 2020) (noting deadlock where co-equal owners freeze out other owners from operations and data); *see also* 34 A.L.R. 4th 13 (1984) (noting that "[w]here the courts have granted [receivership] petitions [on grounds of deadlock], it has generally been found that the dissension or deadlock had resulted in a 'paralysis of the corporate function' that threatened to cause serious detriment to the interests of the stockholders and to the corporation as a solvent prosperous entity"). While the court appreciates that DHECA has been disallowed access to Company operations and assets generally, and takes issue with operations decisions made under, at, or during Goldberg's direction, nothing before the court suggests a deadlock in the parlance of receivership precedent.

The court is similarly unpersuaded that receivership is appropriate based on DHECA's assertion of wrongdoing by Goldberg.[3] To begin, except for the allegation of dissipation of $3.9 Million in crypto assets (addressed below), the purported harms are entirely general and mostly speculative; none is specific or concrete enough to meet the tough standard of a motion to appoint receiver. DHECA's alarm over the Company's recent announcement regarding termination of its staking program is based on DHECA's contention that "in the short-term this decision will generate extra cash that will permit HoudiniSwap's principals (such as Goldberg) to buy back their own tokens to the detriment of others." (ECF No. 72 at p. 8.) But corporate decisions that plate

---

[3] To be clear, the court make no findings pertaining to the merits of this action; rather, it cabins its evaluation to whether DHECA has met its heavy burden on the Motion.

8

up "short-term" opportunity for officers (or other insider higher-ups) to profit (even at the expense of a company's overall well-being) are hardly unusual as a general proposition, and nothing presented suggests that by taking the Company in this direction Goldberg plans, will, or intends to feather his nest at the expense of the Company's value or growth potential or otherwise engage in self-dealing.  In addition, if the court understands DHECA's explanation of termination of the staking program, it presumably may also have the effect of enhancing the value of an individual token based on scarcity and basic supply and demand principles, thus presumably presenting a motivating factor for a token holder to stay put (*i.e.*, invested in the Company).  The court, of course, takes no position on the matter, but rather evaluates the fuller context, as it should.

At bottom, that DHECA may disagree with the business direction of the Company (and fear that Goldberg will self-deal), absent more, is not persuasive; and while the court surely appreciates that termination of the staking program presents opportunity for Goldberg to profit at the expense of the Company's future, at this juncture, this smacks more of doomsaying and prophesying than evidence or indication of a genuine imminent threat.  The court is also mindful that the notion that Goldberg would denude the Company while trying to sell it (which DHECA also asserts as a basis for its Motion) seems illogical at best.  The court is not naïve to the picture DHECA presents, but for the reasons explained, it is not enough.

Moreover, the charge that Goldberg has "improperly asserted claims on behalf of the Company" is bootstrapping—unless DHECA refers to something other than this action of which the court is unaware.  Allegation that Goldberg has (presumably) self-servingly dissipated $3.9 Million in assets is a pretty big bomb to throw with no non-speculative factual premise; for the time being, Mr. Rogers' attestation at paragraph 10 of his declaration (Ex. A to ECF No. 66-1) to which DHECA mounts no substantive counter is sufficient to discount this aspect of the Motion.

That Goldberg (or non-party Rogers) casts aspersions regarding the means through which access was gained to the wallet—and whether those means were through proper access as DHECA explains or not—is a mere distraction; the court need not find, and does not here, that DHECA's access was proper (or not). Moving the assets around—which is the totality of what has been shown—is not sufficient evidence or suggestion of dissipation of assets, conversion, or fraud to warrant the extraordinary relief sought, even if those assets were moved to obscure their view from DHECA in the context of a fight over ownership of the Company and mutual allegations of wrong-doing.

Regarding DHECA's contention that Goldberg threatens to sell the Company out from under DHECA, the court's evaluation that DHECA's asserted property interest is really a disputed claim is sufficient to mitigate this factor. But the court also notes that Goldberg sought a speedy evidentiary determination and declaratory judgment as to ownership of the Company specifically to clear whatever cloud may exist on its title as a result of conflicting representations of ownership (and legal capacity to sell)—a process to which DHECA ultimately heartily objected and which would, in the view of the court, appear to inure to the benefit of DHECA to hasten resolution of the very harms it describes here and in this action generally. Further, albeit through counsel, Goldberg affirms that he "does not intend to consummate any sale pending this Court's ruling on declaratory judgment, and no sale is imminent." (ECF No. 67 at p. 7 n.1.) The court is not persuaded that Goldberg threatens imminent, certain harm to the Company (or DHECA's interest in same, whatever it may be) in this fashion sufficient to warrant the drastic remedy of receivership.

The balance of DHECA's asserted harms regarding stakeholder confusion and regulatory and contract compliance are likewise speculative and too general to form the bedrock for receivership; and they are also well-answered by Mr. Rogers' sworn testimony notwithstanding

DHECA's understandable doubts regarding the weight (and in some instances basis) of those assertions. The court evaluates Mr. Roger's Declaration with appropriate scrutiny in view of his disputed position in the Company and related apparent interest in the outcome of both the Motion and this action as a whole.

In sum, DHECA has not adequately demonstrated clear property interest in the Company, probability of success in the action, or emergency/imminent or irreparable harm absent receivership. And, as explained, the present status of the Company as comfortably solvent, profitable even, and operating with a stable of employees and functioning decision-makers, reinforces the court's conclusion that receivership is not appropriate and would do more harm than good. And, importantly, the court has already scheduled, at DHECA's and Goldberg's respective requests, a preliminary injunction hearing on the rightful owner of the Company, so no party will stay in this holding pattern for an undue period. Should those proceedings materially change the court's view as to the merits of receivership, this matter may be revisited.

In view of the court's above-analysis, the court declines to reach Goldberg's argument that principles of laches bar the requested relief, as well as the Company's suggestion that the court may lack grounds to exert its jurisdiction over the Company for purposes of appointing a receiver.

## IV.   CONCLUSION

For the foregoing reasons, it is this 19th day of November 2025, **ORDERED** that the Motion (ECF No. 63) shall be, and is hereby, **DENIED** without prejudice.

/S/

_____
Julie R. Rubin
United States District Judge